UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:26-cv-21606-LEIBOWITZ

FRANK RUIZ-RODRIGUEZ,

 *Petitioner*,

*v.*

FIELD OFFICE DIRECTOR, MIAMI
FIELD OFFICE, U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT,

 *Respondent.*

_____/

## ORDER

**THIS CAUSE** is before the Court on Petitioner Frank Ruiz-Rodriguez's ("Petitioner")

Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 [ECF No. 1], filed on March 11, 2026.

The Court ordered expedited briefing and entered an Order to Show Cause. [ECF No. 7].

Respondent ("Respondent" or "the Government") filed a response. [ECF No. 9]. Petitioner time

filed a reply. [ECF No. 10]. After careful review of the Petition, the parties' briefing, and the relevant

legal authorities, the Petition [ECF No. 1] is **GRANTED IN PART**.

## BACKGROUND

### I. Petitioner's Pre-Detention History

Petitioner is a native and citizen of Cuba who is currently detained at Krome North Processing

Center ("Krome") in Miami. [ECF No. 9 at 1]. Petitioner applied for admission to the United States

on or around April 3, 2019. [*Id.*]. On April 17, 2019, U.S. Customs and Immigration Services

("USCIS") conducted a credible fear review, at which Petitioner established a credible fear. [*Id.*].

USCIS then issued a Notice to Appear ("NTA") charging Petitioner with inadmissibility in violation

of INA § 212(a)(7)(A)(i)(I). [*Id.* at 1–2]. On December 9, 2019, an immigration judge denied

Petitioner's relief applications and ordered Petitioner removed from the United States. [*Id.* at 2]. Petitioner then appealed the immigration judge's decision. [*Id.*]. On January 19, 2021, while the appeal was still pending with the Board of Immigration Appeals ("BIA"), ICE issued Petitioner a Form I-220A, Order of Release on Recognizance, and Petitioner was released from Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO") custody. [*Id.*]. On March 31, 2021, the BIA dismissed Petitioner's appeal, at which time Petitioner's order of removal became final. [*Id.*].

On June 22, 2021, Petitioner filed his Form I-485, Application to Register Permanent Residence or Adjust Status under the Cuban Adjustment Act with USCIS, which remains pending. [ECF No. 1 ¶ 29]. On February 22, 2022, Petitioner attempted to appear for a scheduled check-in with ICE ERO. [*Id.* ¶ 31]. Because the office was closed, Petitioner was instructed to attempt to reschedule the check-in by emailing an ICE ERO email address. [*Id.*]. Petitioner alleges that he has never received a response. [*Id.* ¶¶ 32]. Petitioner represents that he has at all times maintained a "clean criminal record" and that he has been engaged in authorized work to support himself and his family, which includes his fiancé and brother, both of whom are U.S. citizens. [*Id.* ¶¶ 33–34].

On February 4, 2026, ICE ERO encountered and arrested Petitioner. [ECF No. 9 at 2]. On March 9, 2026, Petitioner was served with a Notice of Removal to Third Country – Mexico. [*Id.*]. To date, Petitioner remains in ICE custody.

## II.  The Instant Petition

Petitioner moves this Court for a writ of habeas corpus ordering his release. [ECF No. 1 ¶¶ 62–101]. Petitioner challenges his detention on four grounds. First, Petitioner argues that Respondent failed to abide by its own procedures in revoking Petitioner's Order of Release on Recognizance, including notice and an opportunity to contest the revocation through an informal review process. [*Id.* ¶¶ 62–69]. Second, Petitioner argues that the revocation of his Order of Release

on Recognizance was unlawful because none of the statutory or regulatory conditions permitting such a revocation were satisfied. [*Id.* ¶¶ 70–77]. Third, Petitioner argues that the revocation of his Order of Release on Recognizance and ensuing detention violate his due process rights under the Fifth Amendment of the Constitution. [*Id.* ¶¶ 78–85]. Finally, Petitioner argues that Respondent has or will violate statutory and regulatory requirements and the requirements of the Fifth Amendment by failing to provide Petitioner with appropriate procedural safeguards prior to his deportation to a third country. [*Id.* ¶¶

Respondent contends that this Court lacks jurisdiction to adjudicate the Petitioner pursuant to Sections 1252(b)(9) and 1252(g) of the INA, and that the Petition should be dismissed as premature under the Supreme Court's ruling in *Zadvydas v. Davis*, 533 U.S. 678 (2001). [ECF No. 9 at 2–7].

## DISCUSSION

### I.   The Court Has Subject-Matter Jurisdiction.

Federal courts are courts of limited jurisdiction may only hear cases that they have been authorized to hear by Article III of the Constitution or the Congress of the United States. *See Kokkonen*, 511 U.S. at 377; *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1304 (11th Cir. 2016). "Several sections of the [INA] curtail the jurisdiction of federal district courts in immigration cases." *Merino v. Ripa*, No. 25-23845-CIV, 2025 WL 2941609, at *1 (S.D. Fla. Oct. 15, 2025) (Martinez, J.) (citations omitted); *see also Johnson v. Acting U.S. Att'y Gen.*, 847 F. App'x 801, 801 (11th Cir. 2021) (per curiam) (holding that the INA "deprives the district courts of subject matter jurisdiction over specific types of immigration actions").

This case does not fall within Congress's clear commands that strip district courts of jurisdiction under the INA. Here, Respondent puts forth the following provisions that ostensibly bar this Court's review of the Petition: Sections 1252(b)(9) and 1252(g). [ECF No. 9 at 4–7]. The Court

3

addresses each in turn and concludes that neither of these provisions deprive the Court of subject-matter jurisdiction.

    A.  <u>Section 1252(b)(9)</u>[1]

Section 1252(b)(9)—the INA's so-called "zipper clause"—provides the following:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court should have jurisdiction, by habeas corpus under section 2241 or title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such question of law or fact.

8 U.S.C. § 1252(b)(9).

Respondent says that § 1252(b)(9) "mean[s] that any issue—whether legal or factual—arising from removal-related activity can be reviewed only through the petition-for-review process." [ECF No. 9 at 6 (alteration adopted) (quoting *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016))]. Boiled down, Respondent argues that Petitioner should lodge his claims before the Eleventh Circuit because the Petition, whether deemed a "direct" or "indirect" challenge to a removal order, attacks a decision or action to detain, thereby stripping this Court of subject-matter jurisdiction. [*Id.*].

The Government's interpretation is not persuasive and contrary to binding precedent. Section 1252(b)(9) strips jurisdiction over review of *removal orders*. *See* 8 U.S.C. § 1252(b)(9). Petitioner is not seeking review of his removal order, nor does he challenge any aspect of his removal proceedings (whether it be initiation or execution); rather, Petitioner challenges *the underlying legality of his detention at Krome*. [*See generally* ECF No. 1]. Respondent counters that the "arising from" language found in § 1252(b)(9) covers Petitioner's claims. [*See* ECF No. 9 at 6–7]. But to adopt such a broad reading of

---

[1]    Respondent at times refers to Section 1252(a)(5). To the extent that Respondent intended to invoke that provision as an independent jurisdictional bar, the Court finds the argument unpersuasive. *See Ocampo-Fernandez v. Ripa*, no. 1:25-cv-24981-LEIBOWITZ (S.D. Fla. Nov., 25, 2025), ECF No. 17 at 7–9.

the statute would disregard the Supreme Court's clear guidance on this very provision.  *See Jennings*, 583 U.S. at 293 ("But this expansive interpretation of § 1252(b)(9) would lead to staggering results. . . . Interpreting 'arising from' in this extreme way would also make claims of prolonged detention effectively unreviewable.").  In sum, because the "zipper clause only applies to claims requesting review of a removal order[,]" the Court cannot and does not accept Respondent's view.  *See Vasquez Carcamo v. Noem*, No. 25-cv-00922, 2025 WL 3119263, at \*2 (M.D. Fla. Nov. 7, 2025); *Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1367 (11th Cir. 2006) ("Because we find that [the petitioner] does not challenge 'a final administrative order of removal' or seek review of a removal order, neither section 106(c) nor section 1252(a)(5) apply to this case. . . . [Section] § 1252(b) is equally clear that subsection (b)(9) applies only 'with respect to review of an order of removal'" (alteration adopted) (citations omitted)).

B.  <u>Section 1252(g)</u>

As with Respondent's other jurisdictional argument, the Court disagrees that Section 1252(g) bars review of the Petition.  Section 1252(g) states:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

Respondent raises a similar argument here as was made vis-à-vis Section 1252(b)(9): that the "arising from" language bars jurisdiction over the Petition because detention "clearly arises from the decision to commence removal proceedings against an alien." [ECF No. 9 at 4–5 (cleaned up)].  Once more, this argument fails, and the Supreme Court has stated as much.

The Supreme Court has narrowly interpreted Section 1252(g).  *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("In fact, what § 1252(g) says is much narrower.  The

5

provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders." (emphasis removed)). Contrary to the Government's position, this section "does not cover the universe of deportation claims." *Camarena v. Dir., Immigr. & Customs Enf.*, 988 F.3d 1268, 1272 (11th Cir. 2021). The Eleventh Circuit has recognized the Supreme Court's limited application of Section 1252(g) to "three specific actions" only. *Id.* (quoting *Jennings*, 583 U.S. at 294). Indeed, the *Jennings* Court expressly cautioned *against* interpreting "arising from" to mean anything more than these three discrete actions. 583 U.S. at 294.

Given this straightforward guidance, Respondent's argument fails. Petitioner does not challenge any of the "three specific actions" enumerated in Section 1252(g)—he only challenges his detention, which is a purely legal question that does not question the Attorney General's discretionary authority to engage in the three listed actions of the statute. *See Grigorian v. Bondi*, No. 25-CV-22914, 2025 WL 2604573, at *3 (S.D. Fla. Sept. 9, 2025) (Ruiz, J.) (first citing *Madu*, 470 F.3d at 1368; then citing *Kong v. United States*, 62 F.4th 608, 617 (1st Cir. 2023); then citing *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004); and then citing *Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999)). *See also Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1258 (11th Cir. 2020); *Gupta v. McGahey*, 709 F.3d 1062, 1065 (11th Cir. 2013) *suggestion for reh'g en banc denied*, 737 F.3d 694 (2013), *cert. denied*, 573 U.S. 931 (2014). Section 1252(g) presents no obstacle here.

Therefore, the Court has subject-matter jurisdiction over the Petition.

## II.     The Revocation of Petitioner's Order of Release on Recognizance and His Subsequent Detention Violate His Right to Due Process.

It is a rather "unremarkable proposition that an agency must abide by its own regulations." *Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1386 (5th Cir. 1979) (discussing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)); *see also Romano-Murphy v. Comm'r*, 816 F.3d 707, 720 (11th Cir. 2016) (noting that "executive agencies must comply with the procedural requirements imposed by

6

statute," and "must respect their own procedural rules and regulations") (quoting *Gonzalez v. Reno*, 212 F.3d 1338, 1349 (11th Cir. 2000))).  Of course, not every agency misstep will compel reversal of agency action, much less release of someone in custody.  *See, e.g.*, *Sharma v. Drug Enf't Agency*, 511 F. App'x 898, 902 (11th Cir. 2013) (noting that an agency's violation of its own regulations will not necessarily be a due process violation if the claimant's rights were not prejudiced or if there is an adequate post-deprivation remedy available to cure the violation).  Courts, however, are not so forgiving when the violation "implicates basic due process rights."  *Cf. Alabama Hosp. Ass'n v. Beasley*, 702 F.2d 955, 958 n. 6 (11th Cir. 1983); *Republic Nat'l Bank of Dallas v. Crippen,* 224 F.2d 565, 566 (5th Cir. 1955) (holding that the denial of the right to be heard "is a violation of due process which can never be harmless error").

Respondent argues that the Petition should be dismissed as premature because Petitioner's detention is presumptively lawful under the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001), in which the Court held that detention for a period of less than six months following the issuance of a removal order is generally reasonable.  [ECF No. 9 at 8–9].  Because Petitioner's detention has thus far lasted just 51 days, Respondent contends that *Zadvydas* and its progeny mandate dismissal.  [*Id.*].

Respondent's argument misunderstands the Petition.  Petitioner's challenge does not go to the length of his detention but rather to Respondent's overwhelming failure to abide by its own regulations in revoking Petitioner's Order of Release on Recognizance and its decision to detain Petitioner without affording him the process required by those regulations or otherwise affording him notice and an opportunity to be heard as required under the Fifth Amendment.  In that sense, this case is similar to *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *6 (S.D. Fla. Sept. 9, 2025). There, the Government revoked an order of supervised release and detained an immigrant subject to a final order of removal for a period far shorter than what the Supreme Court blessed in *Zadvydas*.  *Id.* at *1–

2.   Nonetheless, the Honorable Rodolfo A. Ruiz, II, proceeded to consider the merits of the petitioner's challenge to his detention; namely, that "[t]he process afforded" to the petitioner concerning the revocation of his order of supervised release and subsequent detention "fail[ed] to comply with ICE's own regulations or comport with traditional notions of due process." *Id.* at *9.

In short then, *Zadvydas* and its presumptive length of time for detention is inapposite.  That case does not grace Respondent with a six-month safe harbor from any and all judicial scrutiny.  The challenges asserted here would presumptively lie whether Petitioner had been detained one day or one year.

Turning then to the merits of the Petition, the Court finds that the process afforded to Respondent "fail[ed] to comply with ICE's own regulations or comport with traditional notions of due process." *Id.*  Indeed, the deficiencies here are far starker than what confronted Judge Ruiz in *Grigorian*.  In *Grigorian*, the Government issued the petitioner notice indicating that he would "promptly be afforded an informal interview," at which he would "be given an opportunity to respond to the reasons for the revocation." *Id.* at *2.  Respondent issued no such notice here at all.  More significantly, the Government did conduct an interview in *Grigorian*, albeit one the court found procedurally defective. *See id.* at *7–8.  Here, no such interview took place at all.  At the defective interview in *Grigorian*, the Government offered at least a bare bones rationale for his detention—that the petitioner was being detained to facilitate his removal from the U.S. *Id.* at *7.  Here, the Government has apparently never supplied *any* rationale for Petitioner's detention.  Finally, the petitioner in *Grigorian* had been convicted of six counts of mail and wire fraud, *id.* at *1, whereas here Petitioner has no criminal record.  Thus, the process afforded to Petitioner falls far short of even the process afforded to petitioner in *Grigorian*, which Judge Ruiz nonetheless found constitutionally defective.  The opportunity to contest one's detention through the procedures secured under the laws of Congress and ICE's regulations "is not some ticky-tacky procedural requirement; it strikes at the

heart of what due process demands. *Grigorian*, 2025 WL 2604573, at *9 (citing *Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021)).  Petitioner has been deprived of that opportunity.

Even if Petitioner was not entitled to the procedural protections afforded to immigrants under 8 C.F.R. § 241.13 and § 241.4, Petitioner is entitled to release pursuant to the Due Process clause. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Here, Petitioner has been in custody for 51 days (and counting), "without ever having received a meaningful opportunity to be heard or to contest the basis for his re-detention." *Id.*  Remarkably, Respondent has essentially nothing to say on this issue, besides the naked, unsupported assertion of ICE's authority to "revoke[] [an Order of Release on Recognizance] at any time in the discretion of the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign), in which event the alien may be taken into physical custody and detained."  [ECF No. 9 at 11–12; *see also id.* at 12 ("[A]n order of recognizance can be revoked at any time . . . .")].  Perhaps because of that stark assertion of authority, Respondent has never argued—let alone put forth evidence to suggest—that the revocation of Petitioner's Order of Release on Recognizance complied with the requirements of the Fifth Amendment or its own regulations.  In fact, Respondent's brief uses the phrase "due process" just once, in a footnoted quotation.  [*Id.* at 10 n.2].  That complete disengagement from the constitutional heft of Petitioner's challenge speaks volumes.

Accordingly, the Court finds that the process by which Respondent revoked Petitioner's Order of Release on Recognizance and subsequently detained him violates applicable statutory law and regulations as well as the Due Process Clause of the Constitution in line with the *Matthews v. Eldridge* analysis conducted by other courts in this District.  *See, e.g.*, *Mora Arellano v. Warden Federal Bureau of Prisons et al.*, 26-20044-CIV-ALTONAGA (Jan. 23, 2026), ECF No. 10 at 8–12 (Altonaga, C.J.).

9

"The typical remedy for [unlawful] detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (alteration added; citation omitted); *see also Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he traditional function of the writ is to secure release from illegal custody." (alteration added)). As "[c]ourts around the country have concluded," that relief is appropriate here. *See Grigorian*, 2025 WL 2604573, at *10 (collecting cases); *see also Mora Arellano*, 26-20044-CIV-ALTONAGA, ECF No. 10 at 12 ("It follows that Petitioner is entitled to immediate release from unlawful detention and to the immediate restoration of the conditions of the Recognizance Order that were in effect prior to his re-detention.").

## CONCLUSION

For the reasons set forth above, it is hereby **ORDERED AND ADJUDGED** as follows:

1.  The Petition **[ECF No. 1]** is **GRANTED IN PART**.

2.  Respondent is ordered to immediately release Petitioner from custody subject to the conditions of his pre-existing Order of Release on Recognizance.

3.  Respondent shall certify compliance with this Order on or before March 31, 2026.

4.  Prior to any re-detention of Petitioner, Petitioner is entitled to notice of the reasons for revocation of release on his own recognizance and a hearing before a neutral decision-maker to determine whether re-detention is warranted.

5.  The Petition is otherwise **DISMISSED WITHOUT PREJUDICE**.

    **DONE AND ORDERED** in the Southern District of Florida on March 27, 2026.

_____
DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc:     counsel of record

10